MAUD ALLEN, Respondent, v. ST. LOUIS & SOUTHWESTERN RAILWAY COMPANY, Appellant.

Springfield Court of Appeals, May 19, 1915.

RAILROADS: Death on Track: Evidence Not Sufficient to Establish Liability. Action for death of plaintiff's husband alleged to have been occasioned by defendant's engine and cars running over him. Evidence considered insufficient to support a verdict for plaintiff in that the manner in which deceased met his death is not sufficiently established.

Appeal from Stoddard County Circuit Court.—*Hon. W. S. C. Walker,* Judge.

REVERSED.

*S. H. West* and *Wammack & Welborn* for appellant.

(1) There is no proof that the respondent's husband was struck by the engine pulling appellant's train. (2) The respondent's husband was under duty to keep a lookout for approaching trains and the appellant was not under any duty towards the decedent, except to use diligence to avoid injuring him after having discovered him in a place of peril and oblivious of danger, and there is no evidence that any of the train men ever saw the deceased in a place of danger. Degonia v. Railroad, 224 Mo. 564; Evans v. Railroad, 178 Mo. 508; Cahill v. Railroad, 205 Mo. 393; Rashall v. Railroad, 249 Mo. 509; Aerkfetz v. Receivers, 145 U. S. 418; Elliott v. Railroad, 150 U. S. 245; Salsbury v. Railroad, 175 Mo. App. 334. (3) The decedent was guilty of contributory negligence as a matter of law. Degonia v. Railroad, 224 Mo. 564; Cahill v. Railroad, 205 Mo. 393; Elliott v. Railroad, 150 U. S. 245; Aerkfetz v. Receivers, 145 U. S. 418.

*J. L. Fort, J. W. Farris* and *John H. Bradley* for respondent.

(1) Appellant cannot complain of its first assignment that the court erred in overruling its demurrer at the close of plaintiff's case, because if there is any evidence tending to make an issue of fact properly raised by the pleadings and the evidence, these issues are questions for the jury. It is only when the evidence is such that there can be no two opinions on the subject that the court should sustain a demurrer. Klockenbrink v. Railroad, 172 Mo. 678; Saller v. Shoe Co., 130 Mo. App. 722; Erickson v. Railroad, 171 Mo. 647; Campbell v. Railroad, 175 Mo. 161; Holden v. Railroad, 108 Mo. App. 665; Charlton v. Railroad, 200 Mo. 441;

Johnson & Co. v. Ice & Refrigerating Co., 143 Mo. App. 455-6; King v. Railroad, 143 Mo. App. 291; Bradford v. Railroad, 136 Mo. App. 705; Lawrence v. Ice Company, 119 Mo. App. 323; Doyle v. M. K. & T. Trust Co., 140 Mo. 15; O'Melia v. Railroad, 115 Mo. 205; Kinlan v. Railroad, 216 Mo. 155; Heine v. Railroad, 144 Mo. App. 443; Bluedorn v. Railroad, 108 Mo. 448; Baird v. Citizens' Ry. Co., 146 Mo. 281; Hicks v. Hammond Packing Co., 184 Mo. App. 672, 171 S. W. 937. (2) The court did not err in overruling the appellant's demurrer at the close of the testimony of the whole case because there were issues of fact raised by the pleadings and the evidence, the determination of which rested with the jury. The respondent alleged in her petition that her husband's death was due to the negligence of the appellant in failing to sound the whistle or ring the bell or to give some timely signal or warning of the approach of this train. These were issues of fact as to whether her husband's death were due to the allegations of negligence submitted in the instructions, and the evidence considered as a whole amply justified the jury in finding for the plaintiff. Jennings v. Railroad, 112 Mo. 274; Meyers v. Transit Co., 99 Mo. App. 363; Eswin v. Railroad, 96 Mo. 296; Chamberlain v. Railroad, 133 Mo. 605; Morgan v. Railroad, 159 Mo. 280. (3) The deceased was not guilty of contributory negligence. If he was at work when killed, he was not a trespasser. Eswin v. Railroad, 96 Mo. 296; Kelley v. Railroad, 101 Mo. 76.

ROBERTSON, P. J.—Plaintiff's husband, twenty-four years of age, when working for an independent contractor who was constructing a new track within about ten feet of defendant's old track at a curve on its road between Rockview and Illmo, in Scott county, was run over by defendant's freight train and received injuries resulting in his death. This action was instituted to recover damages therefor and resulted in a

verdict for plaintiff in the sum of $2000 upon which judgment was entered and from which the defendant has appealed.

Numerous points are urged here by defendant as grounds for assailing the judgment but we shall consider only one of them as that goes to the vitals of plaintiff's case. There is no evidence of negligence on the part of the defendant in that it is not shown how the deceased met his death and its demurrer to the testimony should have been sustained.

The accident occurred about 2:30 o'clock on Sunday afternoon of June 15, 1913, when defendant's freight train, consisting of about forty loaded cars was passing in a northeasterly direction up grade towards Illmo. A brother of the deceased testified that he saw "him go across the track ahead of the train." He said that deceased had a shovel in his hands and the witness said he thought rock was in it; that they had been working on the old track; that he saw deceased start across the track, upon which the train was coming, with his shovel but he did not notice whether or not he got across. He was asked if when he saw him the train was right on him, but he did not answer the question directly but simply stated that "The train was coming" and that he did not see him any more until somebody called his attention to the fact that the train had killed him, when he looked and saw the train was passing over him. We cannot gather from the testimony any idea about the length of time that elapsed between the time when the witness saw the deceased crossing the track and when he saw the train passing over him. On cross-examination he testified that when he last saw deceased his situation was such that he had plenty of time to have gotten across the track before the train reached him. Claude Proctor, testified for plaintiff that he saw the deceased crossing the track in front of the train and that it looked to him that the train was not over ten, twelve or fifteen feet from him

and that the deceased seemed to be proceeding with his work in the usual manner, but the witness testified that he looked under the cars and saw him moving around after a third or possibly a half of the train had passed and that he seemed to be ''just walking around.''

In behalf of the defendant its fireman and engineer each testified that they did not see the engine strike anyone but the fireman testified that he saw some men standing on the side of the track to which the witness testified, deceased was going. The conductor, who was on the engineer's seat in the engine, testified that the engine did not strike deceased. In behalf of defendant the foreman, in charge of said work, testified that the deceased, a short time before the train came along, gave in his time and stated that he was going to quit and catch that train when it came along and ride to his home, Fornfelt, a few miles further along defendant's road; that when the train came along the deceased made an effort to board it and was thrown under the wheels. Andrew Hill, a boy sixteen years of age, who carried water for the men, testified that he saw the deceased cross in front of the train and that his curiosity was aroused and he squatted down, looked under the car and observed the deceased attempting to run and catch a car, but that he missed or that he grabbed and was jerked under the train.

Two witnesses, said Proctor and Clarence McCollum, testified in behalf of plaintiff in rebuttal that they were in the roundhouse, a few miles from the scene of the accident when the engine which pulled this train was placed therein that afternoon and that they examined the pilot, McCollum saying that they discovered on the lower part thereof, blood, a piece of hide and some hair; that he could not swear whether it was off of a hog or not as it was all dirty; that the hair was between a dark and a light, the best he could tell; that he could not tell whether it was human hair or hog

Allen v. St. Louis & Southwestern Railway Co.

hair "but it looked mighty like human hair." The other witness upon this point, Proctor, testified that he saw the blood and the hair on the pilot and that the hair looked to him like it was black; he says nothing about the flesh and hide the other witness testified about. The brother of the deceased, to a portion of whose testimony we have already referred, testified about the color of the deceased's hair as follows: "Q. And what color was your brother's hair? A. It was a little bit lighter than mine. Q. You call your hair what color, or have you got any name for it? A. I haven't got any name for it. Q. It is kindly light? A. Yes, sir."

The plaintiff tried her case on the theory, and so presents it here, that her husband was struck by the engine; indeed there is no other theory so plausible for her to take. Considering all of the testimony which is most favorable to the plaintiff, and giving it the most liberal construction, we have not been able to conclude that it tends to prove anything except that the deceased was crossing the defendant's track a short distance before the approaching train and that he was carrying in the discharge of his duty, a shovel of rock. There is no testimony in our opinion that the engine of the train struck him. All of the positive testimony tends strongly to prove that it did not strike him, although we are mindful of and are guided by the rule that we must draw in favor of the plaintiff every reasonable inference of fact to be found in the evidence. [Hall v. M'f'g Coal and Coke Co., 260 Mo. 351, 168 S. W. 927.] The only testimony that can be said to point to the fact that the engine struck deceased is the testimony of the two witnesses, one testifying that he could not identify the hair on the pilot as human hair, and both of them testifying to the color of the hair found as being different from that of the hair of the deceased. Accept as true all that the witnesses testify to and we have the statement of Proctor that the hair was black,

yet the brother of the deceased said his hair was not black, so Proctor's testimony on this point must be ignored. McCollum said that he *could not tell* if it was human hair, but that it looked "mighty like" it. Now, if he who saw the object could not distinguish it as human hair it certainly should not be said that another person, to whom no description or further evidence was furnished, could properly conclude that it was human hair. The position of the hair, blood and flesh on the pilot is inconsistent with the idea that the object from which they came was run over by the train, and the positive uncontradicted and unchallenged testimony of plaintiff's witness, Proctor, that deceased was seen to be walking around after the engine had passed him absolutely disproves this so-called circumstantial evidence. The question here involved is not similar to the cases, many of which respondent cites, where the facts are not disputed but only the question of inferences of negligence from those facts is considered. Here the plaintiff failed to prove the defendant guilty of the act upon which the whole case must be built and, consequently, the judgment is reversed.

*Farrington* and *Sturgis, JJ.*, concur.